UNITED STATES of America, Plaintiff-Appellee,

v.

Douglas Alan WILSON, Defendant-Appellant.

No. 72-2199.

United States Court of Appeals, Ninth Circuit.

April 30, 1973.

Martha Goldin, Atty. (argued), Alan Saltzman, Saltzman & Goldin, Hollywood, Cal., for defendant-appellant.

Dale H. Thayer, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL and CHOY, Circuit Judges, and ENRIGHT,* District Judge.

CHOY, Circuit Judge:

Douglas Alan Wilson was convicted after a nonjury trial of refusal to submit to induction into the armed forces in violation of 50 U.S.C. App. § 462(a). He was sentenced to three years in the custody of the Attorney General. Wilson raises a number of challenges to his conviction, but we find only one of merit. We reverse.

FACTS

Wilson registered for the draft in 1968 and was classified I–A on January 6, 1970. That same month Wilson was hospitalized at the Memorial Hospital of Glendale where, because of an acute narcotics overdose and subsequent respiratory failure, a tracheotomy was performed. On March 11, 1970, Wilson was given a pre-induction physical examination at the Armed Forces Entrance Examining Station (AFEES). He claimed to have a narcotic habit which had resulted in hospitalization and accordingly was scheduled for a psychiatric evaluation. The examining psychiatrist found no neuropsychiatric disorder apparent at that time, noting that Wilson had not documented his claim as a heroin addict. Wilson was found acceptable for induction by AFEES.

Wilson was ordered to report for induction on June 9, 1970. After obtaining a postponement of his induction to present a conscientious objector claim, Wilson had his place of induction transferred to New Orleans but he failed to report. Some months later, Wilson contacted his local board and filled out a current information questionnaire. He was ordered to report for induction on April 20, 1971 but again did not. He was subsequently ordered to report on June 9, 1971.

Wilson sent his local board copies of the 1970 report from Memorial Hospital of Glendale and a confidential report from Woodoaks Therapy Center. The latter report contained an evaluation by two doctors that Wilson was a severely disturbed young man dependent upon a number of narcotics and dangerous drugs, including heroin for over three years. The primary diagnosis was schizophrenia and secondary was drug dependence. Wilson's local board informed him that this information would be forwarded to AFEES where he was to report for another physical examination prior to induction.

Wilson was given a complete physical examination at AFEES on June 9, 1971. He was referred to the civilian psychiatrist on duty, Dr. Higginbotham, for psychiatric evaluation. The stated reason was the previous neuropsychiatric consultation. He noted Wilson's history of drug abuse and found toxic psychotic symptoms. He concluded that the history was within normal limits and that Wilson was not incapacitated from a neuropsychiatric viewpoint. Higginbotham profiled Wilson as "S1," an examinee who met the current psychiatric standards of the military service. These findings were sent to the medical offi-

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

cer, Captain Watson, who found Wilson qualified for induction Wilson then refused to submit.

## DISCUSSION

 The scope of judicial review permitted to this court is the narrowest known to law. United States v. Ervin, 464 F.2d 1021 (9th Cir. 1972). We must determine whether there is a "basis in fact" for the finding that Wilson was qualified for induction. McGee v. United States, 402 U.S. 479, 486, 91 S.Ct. 1565, 28 L.Ed.2d 711 (1971); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Vasilj v. United States, 425 F.2d 1134, 1137 (9th Cir. 1970). We are limited to Wilson's Selective Service File in our inquiry, United States v. Lloyd, 431 F.2d 160, 166 (9th Cir. 1970), cert. denied 403 U.S. 911, 91 S.Ct. 2210, 29 L.Ed.2d 688 (1971), and cannot search the record to determine whether AFEES's finding is supported by substantial evidence. United States v. Wilson, 473 F.2d 297 (9th Cir. 1973). Wilson must affirmatively demonstrate the invalidity of AFEES's action. United States v. Hulphers, 421 F.2d 1291, 1292 (9th Cir. 1969).

 AFEES determines the medical acceptability of a registrant, United States v. Miller, 455 F.2d 358, 360 (9th Cir. 1970), and federal courts must be particularly cautious in reviewing basis in fact questions of a medical nature. See United States v. Sowul, 447 F.2d 1103, 1105 (9th Cir. 1971). But if the record indicates arbitrary action by AFEES or a deficiency in prescribed procedures that results in prejudice to the registrant, this court can take corrective action. United States v. Shunk, 438 F.2d 1204 (9th Cir. 1971); United States v. Black, 456 F.2d 1297, 1298 (9th Cir. 1972); cf. United States v. Beckett, 457 F.2d 785 (9th Cir. 1972). We choose to do so in this case. There was no basis in fact for AFEES's finding that Wilson met current psychiatric standards of the military or that he was qualified for induction.

The government concedes that the examining psychiatrist, Dr. Higginbotham, was unaware of medical standards controlling the acceptability of registrants and argues that the doctor made no determination of Wilson's acceptability. Yet Wilson's Selective Service File indicates that Dr. Higginbotham recorded his finding in shorthand on a consultation sheet as "S1." This translates into a finding that the examinee meets current psychiatric standards for military service.[1] Therefore, Wilson was found

1. The causes for disqualification for psychiatric reasons are set out in AR 40-501 § XVI (1970). They are: psychoses, psychoneuroses and various personality disorders including drug addiction. Higgenbotham was unaware of these grounds for rejection when he made his psychiatric evaluation of Wilson in accordance with AR 601-270 4-20(h)(1)(b) (1969):

(b) *Psychiatric evaluation.* A specific psychiatric evaluation will be made by the Chief, Medical Examining Section, whenever the examining physician has reason to question the examinee's emotional, social, or intellectual adequacy for military service. Such examinees may be referred to a psychiatrist when the services of such a specialist are available with [sic] a period of 2 days. When the services of a psychiatrist cannot be made available within 2 days, or when such referral is not deemed necessary, the medical offi-

cer will make the final psychiatric evaluation except in those instances where a security action is pending and the registrant has answered yes to any of the three questions posed in item 6, DD Form 398. See chapter 2, AR 40-501 for causes for disqualification for psychiatric reasons. The mere possibility that a psychiatric condition will arise later in the military service should not be sufficient reason in itself for disqualification; however, such a possibility should be considered in the light of other findings. (For example, moral waivers involving serious offenses of moral turpitude.) Psychiatric determination of mental deficiency will be made independently of the examinee's scores on the mental tests (AFQT and other), although these scores are useful as confirmatory evidence of this disorder. The short time afforded the medical examiners at the AFEES does not permit

qualified for service under standards of which the examining physician was totally unaware. This arbitrary action deprived Wilson of an opportunity for medical disqualification. United States v. Beckett, *supra*.

The government argues that despite this deficiency Wilson attacks the wrong doctor on this appeal since the medical officer, Captain Watson, reviewed the psychiatric evaluation and was aware of controlling regulations. We think United States v. Verhagen, 341 F.Supp. 637 (E.D.Wis.1972), is instructive and cannot be distinguished from the present case.[2] There an orthopedic specialist examined Verhagen and found him "qualified for duties in the Armed Forces." The reviewing officer then found Verhagen acceptable for induction without providing further explanation. The orthopedist was unaware of army regulations and the court discovered nothing to indicate that personal standards were not utilized. The court held that the decision of the reviewing officer was tainted by the conclusion of an orthopedist who based his finding on improper and unknown standards and that there was no basis in fact for the finding of medical acceptability.

We do not decide that Dr. Higginbotham applied an improper standard, but that he necessarily applied an unknown personal one in finding compliance with the psychiatric standards of the military. Higginbotham's finding of "S1" and the orthopedist's finding of "qualified for duties in the Armed Forces" are indistinguishable from their respective viewpoints as specialists. We find no distinction in the reviewing officer's actions here and those in *Verhagen*.

 Wilson is a young man with a documented history of drug use. We do not decide whether or not he is a drug addict and therefore medically disqualified from the military service. We hold that Wilson deserved a fair determination of his medical claim, but received an arbitrary and capricious evaluation and that there was no basis in fact for the finding of medical acceptability by AFEES.

Reversed.

them to arrive at a proper psychiatric functional evaluation for profiling purposes. A more desirable time for evaluating the individual's functional ability from a psychiatric standpoint is during his basic training period. Therefore, any examinee who meets the current psychiatric standards for military service will be profiled 1 (no profile limitation), under the "S" factor in the PULHES system.

2. The government states in its brief that it has no quarrel with *Verhagen* "when it is established that the private doctor is unaware of the applicable army regulations." The government then seeks to distinguish *Verhagen*. Government Brief at 13–14.